# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **ROGER SHULER and CAROL SHULER,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action Number |
| v. ) | **2:10-cv-01215-AKK** |
| ) | |
| **WILLIAM E. SWATEK, et. al.,** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Before the court are the following motions: Defendant Alabama State Bar's (the "State Bar") Motion to Dismiss, (doc. 9); Defendants Shelby County Sheriff Chris Curry ("Curry") and Deputy Sheriff Bubba Caudill's ("Caudill") Motion to Dismiss, (doc. 14); Defendant Alabama Circuit Judge Hub Harrington's ("Judge Harrington") Motion to Dismiss, (doc. 16); Defendant Mike McGarity's ("McGarity") Motion to Dismiss, (doc. 19); Defendant William E. Swatek's ("Swatek") Motion to Dismiss, (doc. 20); Plaintiffs Carol and Roger Shuler's ("Plaintiffs") Motion to Disqualify, (doc. 23); Plaintiffs' Motion to Strike, (doc. 28); and Judge Harrington's Motion to Strike, (doc. 39). The motions are ripe for consideration.

1

Before addressing these motions, however, the court turns first to Plaintiffs'
Amended Complaint, (doc. 38), which the court STRIKES because Plaintiffs did
not seek consent of Defendants or request leave of the court, as required by  Rule
15(a)(2) of the Federal Rules of Civil Procedure.[1]  In any event, the court should
not grant Plaintiffs leave to amend where, as here, such amendment is futile.[2]  *See*
*Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) ("This court
has found that denial of leave to amend is justified by futility when the complaint
as amended is still subject to dismissal.") (citation and quotation marks omitted).
Additionally, the court MOOTS Plaintiffs' motion to disqualify Swatek from
serving as attorney for McGarity, (doc. 23).  The court has not yet considered any
of the pleadings filed by Swatek or McGarity, and, for the reasons below, needs
not consider Swatek's involvement in the case because it lacks jurisdiction over
this case entirely.

As it relates to the pending motions, Plaintiffs filed seven counts against

_____

[1]Rule 15(a)(2) of the Federal Rules of Civil Procedure, as amended December 1, 2009,
bars submission of an amended pleading filed more than 21 days after a responsive pleading,
including motions to dismiss under Rule 12(b), without leave of court.  Several of the Defendants
filed 12(b) motions to dismiss more than 21 days before Plaintiffs amended their complaint, thus
Plaintiffs cannot do so without leave of this court.

[2] For explanation of the futility of Plaintiffs' amendments, see *infra* III.1.n.9.  In light of
the court's determination that Plaintiffs' amendment would be futile, the court does not consider
Judge Harrington's Motion to Strike the Amended Complaint, (doc. 39).  Because the court finds
the amendment improper and futile *sua sponte*, the court MOOTS Judge Harrington's motion to
strike.

Defendants, asserting two federal claims, under 42 U.S.C. § 1983 (Count I) and § 1985 (Count II), for violations of their equal protection rights under the Fourteenth Amendment. *Id.* at 11-13. Additionally, they assert Alabama state law claims of defamation (Count III), conversion (Count IV), abuse of process (Count V), assault and battery (Count VI), and negligence (Count VII).[3]  *Id.* at 13-16. Plaintiffs request compensatory and punitive damages, declaratory and injunctive relief preventing the continuing violations of their rights, and an order removing the sheriff's deed and "restoring Shulers' full rights to their property and removing any rights claimed by others." *Id.* at 17.  Defendants moved to dismiss[4] under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), asserting a lack of subject matter jurisdiction, absolute or qualified immunity, and failure to state a claim.  *See* Docs. 9, 14, 16, 19, 20.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a

---

[3]Plaintiffs assert their federal claims only against Swatek, McGarity, Curry, Caudill, and Harrington, the parties to the sheriff's sale of their home.  The only claim Plaintiffs allege against the State Bar is the state law claim for negligence. *See* doc. 1.

[4] Plaintiffs have filed a motion to strike, (doc. 28), asserting that McGarity and Swatek, who filed answers to Plaintiffs' complaint before filing their motions to dismiss, cannot pursue their motions.  For purposes of this order, the court again notes that it does not consider McGarity and Swatek's motions to resolve whether or not federal jurisdiction over this matter exists.  Nonetheless, Plaintiffs correctly assert that McGarity and Swatek cannot pursue dismissal on 12(b)(6) grounds after answering Plaintiffs' complaint, but these Defendants may still pursue dismissal based on jurisdictional grounds, which cannot be waived. *See* FED. R. CIV. P. 12(h).

short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, ---U.S.---, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 1949 (citing *Bell Atl. Corp.*, 550 U.S. at 557).[5]

Under Federal Rule of Civil Procedure 12(b)(1), a party may move the court to dismiss a case if the court lacks jurisdiction over the subject matter of the case. Plaintiffs, as the parties invoking jurisdiction, bear the burden of establishing the court's subject matter jurisdiction. *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994). Attacks on subject matter jurisdiction under Rule 12(b)(1) occur in two forms: facial attacks and factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525,

---

[5] The Eleventh Circuit has made clear that district courts should no longer apply a heightened pleading standard to actions under § 1983. *See Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010). "After *Iqbal* it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints." *Id.* To the extent that Defendants assert otherwise, they err.

1529 (11th Cir. 1990); *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731 (11th

Cir. 1982). "'Facial attacks' on the complaint require the court merely to look and

see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction,

and the allegations in his complaint are taken as true." *McMaster v. United States*,

177 F.3d 936, 940 (11th Cir. 1999) (quoting *Lawrence*, 919 F.2d at 1528-29).

Therefore, "when faced with a 12(b)(1) challenge to the face of a complaint, the

plaintiff can survive the motion by showing any arguable basis in law for the claim

made." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th

Cir. 1996). "Factual attacks, on the other hand, challenge 'the existence of subject

matter jurisdiction in fact, irrespective of the pleadings, and matters outside the

pleadings, such as testimony and affidavits are considered.'" *Cook Oil Co., Inc. v.

United States*, 919 F. Supp. 1556, 1559 (M.D. Ala. 1996) (quoting *Lawrence*, 919

F.2d at 1529).

   Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a

complaint fails to state a claim upon which relief can be granted. "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at

1949 (citations and internal quotation marks omitted). A complaint states a

facially plausible claim for relief "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

On a motion to dismiss under Rule 12(b)(6), the court accepts all of a plaintiff's factual allegations as true.  *See, e.g.*, *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).  However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *Iqbal*, 129 S. Ct. at 1950.

## II.  FACTUAL BACKGROUND

Plaintiffs' complaint provides the court with a lengthy and descriptive narrative detailing their longstanding dispute with McGarity.  Doc. 1 at ¶¶ 17-31.  In 1998, McGarity purchased the property adjacent to Plaintiffs' home.  *Id.* at ¶ 17.  Since then, Roger Shuler and McGarity have embroiled themselves in several disputes, ranging from litigation to actual physical altercations.  *See id.* at ¶¶ 18-25.  After several verbal spats regarding their shared property boundary, Roger

6

Shuler initiated a criminal trespass suit against McGarity in the spring of 2000 wherein McGarity was acquitted.  *Id.* at ¶¶ 20-21.

Shortly thereafter, McGarity filed suit against Roger Shuler, alleging malicious prosecution and conversion, seeking damages of $25,000.  *Id.* at ¶ 22. In the 2004 trial, the jury returned a verdict against McGarity on Shuler's trespass counterclaim, awarding Shuler $1 in damages.  *Id.*  The jury also found that Shuler had converted McGarity's property and awarded McGarity $1,525 in compensatory and punitive damages.  *Id.*  Despite Shuler's post-trial motions asserting procedural errors and violations of his due process rights, the court declined to alter the jury award.  *Id.* at ¶ 23.

After the verdict, Plaintiffs asserted several ethics violations against Swatek, McGarity's lawyer in both the criminal and civil state-court trials, with the Alabama State Bar.  *Id.* at ¶ 24.  However, the State Bar chose not to expend its limited resources investigating a complaint that was not initiated by clients of the attorney at issue.  *Id.*  This decision is apparently the basis for Plaintiffs' claims against the State Bar in this action.

In October 2006, Roger Shuler and McGarity engaged in a physical altercation wherein McGarity allegedly struck Shuler with a road sign.  *Id.* at ¶ 25. Plaintiffs reported the incident to the Shelby County Sheriff's Office, but chose

7

not to file criminal charges because the Sheriff's Department "refused to change the charge to a felony" as Plaintiffs assert the law required. *Id.*

In the summer of 2007, Roger Shuler started a blog, Legal Schnauzer, to discuss his troubles with McGarity and the Alabama legal system. *Id.* at ¶¶ 26-27. This decision allegedly prompted McGarity to try to collect on the jury award he secured on the 2004 conversion claim. *Id.* On behalf of McGarity, Swatek applied for a writ of execution from the Shelby County Circuit Clerk to seize Plaintiffs' cars or home for a sheriff's sale to pay the outstanding judgment. *Id.* at ¶ 28. The Shelby County Clerk of the Court issued the writ of execution on September 21, 2007. *Id.* In February 2008, Plaintiffs received notice of levy, signed by Sheriff Curry, informing Plaintiffs of the impending sale of their home and property. *Id.* Plaintiffs received over twenty-five (25) phone messages from Sheriff Curry's office informing them of the upcoming sale and inquiring whether they had arranged a settlement with the foreclosing party. *Id.* Plaintiffs explained that they were not attempting to work out a settlement because they believed the original 2004 judgment against them was void, and, in any event, they had claimed an exemption for their property, pursuant to Alabama Code Title 6, Chapter 10. *Id.* at ¶ 29; ALA. CODE §§ 6-10-1 *et seq.* (1975).

Because McGarity purportedly did not contest Plaintiffs' exemption,

8

Plaintiffs assert that the levy and sale of their property should have stopped automatically. *Id.* at ¶ 29.  In light of Plaintiffs' contention, Sheriff Curry's office sought guidance from Judge Harrington. *Id.*  Judge Harrington apparently disagreed with Plaintiffs' position and ordered the sale to proceed. *Id.*  Plaintiffs received notice of Judge Harrington's order from Sheriff Curry and admit that "the court file shows that Harrington indeed signed off on the sale." *Id.*  Plaintiffs contend, however, that Judge Harrington "acted outside his official capacity" by ordering the sale to proceed because "a sheriff's sale is recognized by statute and does not require any action by a judge." *Id.*  As a result, Plaintiffs did not appeal Judge Harrington's order or take any other action to stop the sale. *Id.*

The Shelby County Sheriff's office, presumably including Caudill and Curry, then listed the impending sheriff's sale in the Shelby County Reporter for several weeks, including the date the sale eventually took place. *Id.* at ¶ 30. Sheriff Curry also placed notice on public bulletin boards in the Shelby County Courthouse. *Id.*  These notices stated that the sale would be conducted to satisfy a judgment against Roger Shuler in favor of McGarity, but, according to Plaintiffs, failed to mention that the initial judgment was void as a matter of law and could not take place because McGarity failed to contest the Shulers' exemption claim.

*Id.* The sheriff's sale proceeded, as ordered, in May 2008. *Id.* at ¶ 31.[6] As a result, Plaintiffs assert that the sheriff's deed recorded in Shelby County Probate Court is in error and seek a review and reversal of the sale. *Id.* at ¶ 32.

Defendants have moved to dismiss on jurisdictional grounds and on the merits. For the reasons stated more fully below, the court DISMISSES this case without prejudice for lack of subject matter jurisdiction.[7]

### III.  ANALYSIS

Plaintiffs proceed in this case *pro se*. Accordingly, the court construes their pleadings liberally. *See Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008) (citation omitted).

### 1.  **The State Bar**

Plaintiffs are pursuing a claim against the State Bar because it failed to investigate a grievance they filed against Defendant Swatek. Plaintiffs do not

---

[6] Plaintiffs' complaint also includes general assertions against Roger Shuler's former employer, the University of Alabama at Birmingham ("U.A.B."), and alleges that U.A.B. terminated him, in part, because he refused to consider settling the claims prior to the sheriff's sale. Doc. 1 at ¶ 31. The actions of U.A.B. regarding Shuler's employment seemingly lack any relation to this case. The court suspects such factual detail was included erroneously, as was Plaintiffs' offhand reference to Title VII, (doc.1 at ¶ 1), because U.A.B. is not a defendant here. Such detail likely relates instead to Shuler's claim against U.A.B. currently pending in this court before the Honorable William M. Acker, Jr., Case No. 2:10-CV-01271.

[7] The court notes that Defendants present several other grounds that seemingly support dismissal as well. The court addresses these alternative justifications briefly at the conclusion of this opinion.

appear to assert a constitutional claim against the State Bar.[8]  Instead, the only

claim they bring against the State Bar is a state-law negligence claim based on the

decision not to investigate their claims regarding Swatek's alleged ethics

violations.  Doc. 1 at 16.  This claim fails on three separate grounds.  First, the

claim fails because Plaintiffs lack standing to pursue a claim based on a State Bar

officer's decision not to investigate their complaint against Swatek.  *See Smith v.*

*Shook*, 237 F.3d 1322, 1324-25 (11th Cir. 2001) (upholding the district court's

dismissal for lack of standing where plaintiff sued based on a state bar officer's

failure to prosecute plaintiff's former attorney); *see also Doyle v. Oklahoma Bar*

*Ass'n*, 998 F.2d 1559, 1566 (10th Cir. 1993) (upholding dismissal for lack of

standing in suit against a bar association and its officers based on the state bar

investigator's refusal to prosecute his ex-wife's lawyer).

Second, the State Bar is immune from suit as a branch of the Alabama

Supreme Court.  The Preamble to the Alabama Rules of Disciplinary Procedure

states:

---

[8] In the event Plaintiffs assert § 1983 and § 1985 claims against the State Bar, those claims fail also.  *See, e.g.*, *Walker v. Scarborough*, 2007 WL 2784358, at *2 (M.D. Ala. Sept. 24, 2007) ("The Alabama State Bar is not a legal entity subject to suit or liability under § 1983 . . . nor is it a person within the meaning of 42 U.S.C. § 1983.") (citation omitted); *Ellis v. Alabama*, 2005 WL 1388064, at * 5 (S.D. Ala.  June 10, 2005) ("Defendant Alabama State Bar is not a 'person' within the meaning of § 1983 that may be sued."), *adopted in*, No. Civ. A. 05-117-P-M., 2005 WL 1657124 (S.D. Ala. July 14, 2005).

> The Supreme Court of Alabama has inherent responsibility to supervise the conduct of attorneys who are its officers, and in furtherance thereof, it promulgates the following [Rules of Disciplinary Procedure] superseding all other rules and statutes pertaining to disciplinary enforcement heretofore promulgated or enacted.

*See also Worley v. Alabama State Bar*, 572 So. 2d 1239, 1242 (Ala. 1990).  "Thus, in exercising its inherent responsibility, [the Alabama Supreme Court] created the [Disciplinary Board of the State Bar], but it retained the power to inquire into the merits of any matters before the Board and retained the power to take any action it sees fit to take in such matters."  *Id.*; *see also Bd. of Com'rs of Ala. State Bar v. State ex rel. Baxley*, 324 So. 2d 256, 258-62 (Ala. 1975) (holding that the State Bar is an arm of the Alabama Supreme Court and detailing the regulation of attorneys by the State Bar as a judicial function).  The judicial nature of the State Bar aligns with the role of other state bars nationally.  *See Worley*, 324 So. 2d at 261 n.2 (citing cases from all fifty states indicating the judicial function of the regulation of lawyers).[9]

---

[9]Plaintiffs' Amended Complaint, doc. 38, though filed out of time without leave of this court, would not save Plaintiffs' claims.  Plaintiffs amended their complaint to sue the general counsel, assistant general counsel, and an investigator for the State Bar.  First, as noted above, Plaintiffs lack standing to sue based on a grievance officer's refusal to prosecute Swatek.  *See Smith*, 237 F.3d at 1324-25.  Second, individual employees of the State Bar are immune for their decisions regarding the discipline of attorneys.  *See* AL R. DISC. P. RULE 15.  That rule merely codifies the quasi-judicial immunity afforded to such members of the State Bar who exercise discretion in the performance of a judicial function.  *See, e.g.*, *Simons v. Bellinger*, 643 F.2d 774, 777-785 (D.C. Cir. 1980) (examining the issue in great detail and granting absolute immunity to committee members of the D.C. bar for their actions in determining whether and how to

Moreover, as an arm of the Alabama Supreme Court, the State Bar cannot be sued in federal court because the State of Alabama has not waived its Eleventh Amendment immunity.  *See McFarland v. Folsom*, 854 F. Supp. 862, 872 (M.D. Ala. 1994) ("[T]he court does not have jurisdiction over claims against those defendant entities who are identified in the complaint simply as 'the Alabama State Board of Bar Examiners' . . . and the 'Alabama Supreme Court,' when Alabama is the real party in interest and when Alabama has not consented to be sued.").  "This constitutional limitation on the exercise of federal jurisdiction applies not only to the state sued in its own name, but to state agencies acting under its control, or as 'arms of the state.'"  *Id.* (quoting *Welch v. Texas Dep't of Highways and Pub. Transp.*, 483 U.S. 468 (1987)); *see also Krempp v. Dobbs*, 775 F.2d 1319, 1321 (5th Cir. 1985) ("Plaintiffs' claims for damages against the State Bar and the State Commission on Judicial Conduct are barred by the [E]leventh [Amendment].").  As in *McFarland*, the Eleventh Amendment bars Plaintiffs' claims against the State Bar, as it is an arm of the Supreme Court and, therefore, has not waived the sovereign immunity of the State of Alabama to allow suit

---

investigate a complaint); *see also Cohran*,  790 F. Supp. at 1574-75 ("State bar disciplinary proceedings are judicial in nature.") (collecting cases).  Thus, even were the court to grant Plaintiffs' attempt to amend their complaint without leave, the added parties are absolutely immune from suit and due to be dismissed accordingly.

against it in federal court.

Finally, because the State Bar and its employees are afforded absolute judicial immunity for the exercise of discretion within their official capacity, Plaintiffs' claim also fails based on judicial immunity grounds. *See Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (upholding district court's finding of absolute immunity for defendant state bar members who were acting as agent's of the state supreme court).  The court directs the parties to the analysis in *Noffsinger v. Nebraska State Bar Ass'n*, 622 N.W. 2d 620 (Neb. 2001), which this court adopts.  Briefly, in *Noffsinger*, plaintiffs asserted a negligence claim against the state bar for failing to investigate an attorney after receiving complaints.  *Id.* at 623.  The Supreme Court of Nebraska noted that the state bar was a branch of the state supreme court and performed a judicial function and, therefore, enjoys quasi-judicial immunity.  *Id.* at 626.  The court also concluded "there is no reasonable possibility that an amendment of the [complaint] could overcome the immunity granted to the [state bar]" in light of the immunity granted it under its rules of disciplinary procedure.  *Id.*  This court finds also that the State Bar and its employees have judicial immunity for actions taken in their official capacity.  *See also Cohran v. State Bar of Georgia*, 790 F. Supp. 1568, 1575 (N.D. Ga. 1992) (holding that, as an agent of the state supreme court, the state bar was immune

14

from liability for its conduct with respect to lawyer discipline).

In short, sovereign and judicial immunity, as well as lack of standing, support dismissal of Plaintiffs' claim against the State Bar.  Therefore, the claims against the State Bar are DISMISSED.

### 2.  **Individual Defendants**

As it relates to the other Defendants, Plaintiffs assert several claims that essentially arise out of their dissatisfaction with the application and interpretation of Alabama law by Alabama courts.  Plaintiffs, understandably, feel wronged because their home was auctioned to satisfy a relatively small debt.  Moreover, Plaintiffs contend that the auction violated Alabama law because, among other things, they believed that the 2004 judgment was void and also because they had claimed an exemption for their property.  Although sympathetic to Plaintiffs, this court notes that federal courts are courts of limited jurisdiction, with the power to hear only cases authorized by the Constitution or by statute.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Consequently, federal courts are "obligated to inquire into subject-matter jurisdiction *sua sponte* whenever it may be lacking."  *Charon-Bolero v. U.S. Att'y Gen.*, 427 F.3d 954, 956 (11th Cir. 2005); *Allapattah Servs., Inc. v. Exxon Corp.*, 362 F.3d 739, 753 (11th Cir. 2004).  Thus, before the court may consider the merits of Plaintiffs'

claims and the propriety of the actions taken against them, the court must first

ascertain whether this case falls within the limited set of cases and controversies

over which it has the power to rule.

### A.  The *Rooker-Feldman* Doctrine

Despite their contentions to the contrary, Plaintiffs are asking this court to

review the decision of a state court.  However, the *Rooker-Feldman* doctrine has

strictly limited federal district courts' authority to review state court judgments

and related claims.  *See generally Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,

544 U.S. 280 (2005); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S.

462 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923).  Because the doctrine

involves subject matter jurisdiction, it predominates over other issues because,

where it applies, the court cannot consider the merits of the case.  *See Powell v.

Powell*, 80 F.3d 464, 466-67 (11th Cir. 1996); *Garry v. Geils*, 82 F.3d 1362, 1365

(7th Cir. 1996).

"The *Rooker-Feldman* doctrine generally recognizes that federal district

courts do not have jurisdiction to act as appellate courts and precludes them from

reviewing final state court decisions."  *Ware v. Polk Cnty. Bd. of Cnty. Comm'rs*,

2010 WL 3329959, at *1 (11th Cir. Aug. 25, 2010) (citation omitted).  The

Supreme Court has held that the *Rooker-Feldman* doctrine is confined to "cases

brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Nicholson v. Shafe*, 558 F.3d 1266, 1274 (11th Cir. 2009) (quoting *Exxon Mobil*, 544 U.S. at 284). "The doctrine applies to both federal claims raised in the state court and to those 'inextricably intertwined' with the state court's judgment." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009). "A claim is inextricably intertwined if it would effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues." *Id.* (internal quotation marks and citation omitted).

Significantly, as it relates to this case, the Eleventh Circuit has held that the *Rooker-Feldman* doctrine bars federal court review of state-court orders authorizing a writ of execution or sheriff's sale, even where the plaintiffs assert claims under § 1983:

> Further, [plaintiff] sought a declaration from the district court, and now this Court, that the state court orders authorizing the execution sale of his properties were void . . . . In other words, [plaintiff's] request for declaratory judgment 'complains of injuries caused by state-court judgments' and 'invites district court review and rejection of those judgments.' The *Rooker-Feldman* doctrine *precluded* the district court from engaging in such a review.

*Paletti v. Yellow Jacket Marina, Inc.*, 2010 WL 3402271, at *4 (11th Cir. Aug. 31,

2010) (emphasis added); *see also Ware*, 2010 WL 3329959 at *1 ("His § 1983

claims effectively ask the district court to review and reject the state court's

judgment.  And his federal claims are either the same as those raised in his

counterclaims in state court or otherwise inextricably intertwined with the state

court judgment because they focus on the legality of the lien that was litigated in

state court."); *King v. Epstein,* 167 F. App'x 121, 124 (11th Cir. 2006) (affirming

the district court's dismissal under *Rooker-Feldman* for lack of subject matter

jurisdiction where the plaintiffs' claims either "flow[ed] directly from the Florida

county court judgment and writ (e.g. the sales of their property), or should have

been raised there in defense (e.g. the alleged homestead exemption, fraudulent

practices, and improper joining of [parties])" and where there was "no reason

alleged why they could not have appealed this decision to a state court").  As

Plaintiffs may be aware, Eleventh Circuit decisions are binding on this court.

To the extent that Plaintiffs believe the Eleventh Circuit is incorrect in

holding that state-court litigants cannot challenge sheriff sales in federal courts,

Plaintiffs are in the minority.  This court notes that other circuits concur that a

state-court order of a sheriff's sale is final and, therefore, not reviewable in federal

district court nor subject to a constitutional attack based on procedures that the

state court either ordered or found satisfactory.  *See Ash v. Redevelopment Auth. of*

*Philadelphia*, 143 F. App'x 439, 442 (3rd Cir. 2005) ("To the extent [plaintiff's]

complaint seeks to challenge on equal protection grounds the Court of Common

Pleas order allowing the property . . . to be sold at sheriff's sale, he is barred by the

*Rooker-Feldman* doctrine."); *In re Knapper*, 407 F.3d 573, 579-580 (3rd Cir.

2005) (holding that *Rooker-Feldman* prevented the bankruptcy court from

exercising jurisdiction over plaintiff's due process claims alleging that the

sheriff's sale in question was based on invalid service); *Saker v. Nat'l City Corp.*,

90 F. App'x 816, 818-19 (6th Cir. 2004) (remanding a case to district court with

instructions to dismiss plaintiff's claim under *Rooker-Feldman* where plaintiff's

federal claim could only be predicated on a finding that the state court's order to

proceed with the sale of property constituted an improper interpretation of state

law); *GASH Assocs. v. Vill. of Rosemont, Ill.*, 995 F.2d 726, 728-29 (7th Cir. 1993)

(noting that it has "held that the *Rooker-Feldman* doctrine barred [the] litigation,

because plaintiffs' injury stemmed from the state judgment – an erroneous

judgment, perhaps, entered after procedures said to be unconstitutional, but a

judgment nonetheless").  Thus, unfortunately for Plaintiffs, federal courts simply

cannot entertain constitutional claims that require the court to review and reject a

state court's determination to order a sheriff's sale.

### B. The *Rooker-Feldman* Doctrine Bars Further Review Here

19

Turning now to the case at hand, *if* Plaintiffs' claims are intertwined with the judgment and order of a state court, the *Rooker-Feldman* doctrine bars this court's review of their merits.[10]  Plaintiffs argue, however, that *Rooker-Feldman* should not apply, asserting that this case does not involve a final judgment and that Judge Harrington exceeded his judicial authority in ordering the sale to proceed.  *See* docs. 21, 22.  The court considers the applicability of the *Rooker-Feldman* doctrine and addresses Plaintiffs' arguments below.

(i)     *Plaintiffs' Claims Are Intertwined with the State-Court Order*

Plaintiffs' requested relief is "inextricably intertwined" with Judge Harrington's decision to order the sale to proceed,  *see Casale*, 558 F.3d at 1260, because this court cannot provide Plaintiffs with the review or the relief they request without determining whether Judge Harrington correctly applied the law to the facts at hand.  Although couched as an equal protection claim, Plaintiffs are essentially appealing Judge Harrington's decision.  In other words, they want this court to find that Judge Harrington erred when he ordered the sale of their house to proceed.  Unfortunately for Plaintiffs, as explained below, the relief they seek

---

[10] The fact that the initial judgment occurred several years prior in a separate court from the order approving the sale does not undercut the force of those judgments nor does it permit this court to ignore the possible applicability of the *Rooker-Feldman* doctrine to a review of either decision.

creates the quintessential *Rooker-Feldman* issue that prevents this court from

reviewing Judge Harrington's decision.

    The action that gave rise to the alleged equal protection violation was the

ordered sale of their home despite the fact that, according to Plaintiffs, the sale

violated Alabama law.  Judge Harrington, however, determined that the sale could

lawfully proceed.[11]  At its core, Plaintiffs' complaint asks this court to return to

---

    [11] Even if the court could review Judge Harrington's decision, it doubts it would find Judge Harrington in error.  In *Satterfield v. Clark*, 514 F. Supp. 1323 (M.D. Ala. 1981), *aff'd by*, *Satterfield v. Clark*, 685 F.2d 1387 (11th Cir. 1982) (unpublished table decision), Judge Truman M. Hobbs of our sister court on the Middle District of Alabama considered a similar issue.  The *Satterfield* court confronted a plaintiff who claimed error because of "the failure of the sheriff's department to release [the property] following the filing of a personal exemption" where the foreclosing party "failed to contest [plaintiff's] exemption within ten days of the filing."  *Id.* at 1325.  The plaintiff rested his claim on the language of Alabama Code §§ 6-10-1 *et seq.* and asserted that the release of property was automatic and mandatory.  *Id.*  The court disagreed, holding that a sheriff may inquire into the validity of the exemption where it appears to be lacking on its face.  *Id.* at 1327.

    The *Satterfield* court noted that, under Alabama law, a sheriff need not honor an exemption where the execution was issued upon a judgment based upon tort.  *Id.* (citing *Kennedy v. Smith*, 11 So. 665, 666 (Ala. 1892)); *see also Harris v. Jenkins*, 90 So.2d 764, 765 (Ala. 1956) (noting that "exemptions cannot be claimed from execution on a recorded tort judgment"); *Erlenbach v. Cox*, 89 So. 465, 465 (Ala. 1921) ("It has been well settled by the previous decisions of this court that there can be no claim of exemption against an execution issued upon a judgment in an action ex delicto.").  Under Alabama law, an exemption is unavailable where, as here, the writ of execution is based upon a tort judgment against the individual claiming an exemption.  And, under Alabama law, a sheriff is permitted to inquire into the sufficiency of an exemption from an execution based upon a tort judgment.  *See Satterfield*, 514 F.Supp. at 1325.

    Notably, the *Satterfield* court did not apply a *Rooker-Feldman* analysis, though this is likely explained, in part, by the fact that *Satterfield* predates the Supreme Court's *Feldman* decision.  Additionally, the sheriff's sale at issue in *Satterfield* occurred without any state-court order, unlike the instant case.  Nonetheless, the court found the sheriff's rejection of the exemption claim lawful even though the foreclosing party never filed a contest.  *Id.*  Thus, it appears Judge Harrington could justifiably have ordered the sale to proceed under Alabama law despite the fact that Plaintiffs' filed an exemption that McGarity never contested.  In any event, Judge Harrington was certainly better positioned than this court to apply Alabama law to the

them the full legal rights to possess their home and to declare a variety of Defendants' actions as wrong.  Plaintiffs' § 1983 and § 1985(3) claims ask this court to conclude that Judge Harrington incorrectly or inappropriately ordered the sheriff's sale to proceed, and that, by securing and then following that order, Defendants conspired to and successfully deprived them of the equal protection of the laws of the United States.  Thus, the only way for Plaintiffs to prevail is for this court to review Judge Harrington's order to proceed with the sheriff's sale and to overturn that order and declare it wrongly decided.[12]

However, this court cannot grant Plaintiffs the requested relief.  Instead, because Plaintiffs believe Judge Harrington erred, they should have sought relief and review in the Alabama appellate courts.  Plaintiffs simply cannot bypass the Alabama court system by collaterally attacking its decisions here under the guise of constitutional claims.  *See Casale*, 558 F.3d at 1260 (noting that a federal claim is barred by *Rooker-Feldman* as "inextricably intertwined" where "it succeeds only to the extent the state court wrongly decided the issue"); *Long v. Shorebank*

---

facts before him.

[12] As a basis for their argument against Judge Harrington's order, Plaintiffs assert that the 2004 judgment against Shuler is also void, *see* doc. 1 at ¶ 29, and does not support the monetary award for which their house is now being foreclosed.  For the same reasons this court cannot review Judge Harrington's order, it cannot review the propriety of either the jury's verdict in 2004 or Judge G. Dan Reeves' denial of Roger Shuler's post-trial motions in that case.

*Dev. Corp.*, 182 F.3d 548, 555 (7th Cir. 1999) ("If the injury alleged resulted from the state court judgment itself, the *Rooker-Feldman* doctrine dictates that the federal courts lack subject matter jurisdiction, even if the state court judgment was erroneous or unconstitutional.") (internal citation omitted).

Importantly, the court notes that all of Plaintiffs' claims substantially pre-date the filing of the instant action and stem from a state-court action either affirming the jury award or ordering the execution sale of their property.  In other words, both of Plaintiffs' federal claims are "inextricably intertwined" with a state-court order that this court cannot review.  *See, e.g.*, *Cooper v. Okaloosa Cnty.*, 2007 WL 3306669, at *9 (N.D. Fla. Nov. 5, 2007) (dismissing  § 1983 and § 1985(3) claims jointly under *Rooker-Feldman*).  As our sister court in the Southern District held when it faced a similar situation, "this Court lacks authority to consider substantially all of [the plaintiff's] claims, because they predate and stem from the Mobile County Circuit Court's judgment awarding possession to [defendant].  These claims either were or should have been litigated before the Mobile County Circuit Court and/or on appeal before the Alabama Court of Civil Appeals."  *Lucy v. Walter Mortg. Co.*, 2009 WL 3336685, at *2 (S.D. Ala. Oct. 14, 2009).  Likewise, Plaintiffs here should have litigated their claims in the Shelby County Circuit Court and/or on appeal to the Alabama Court of Civil Appeals.

Having failed to do so, they cannot now seek refuge in this court, which lacks the authority to hear their claims.

### (ii)    *Plaintiffs Attack  a Final Judgment*

To avoid *Rooker-Feldman*, Plaintiffs argue that "[t]here was no final state court judgment in the matter at hand" because it "involved a sheriff's sale, not a state court judgment."  Doc. 21 at ¶ 1; doc. 22 at ¶ 1.  However, Plaintiffs obfuscate facts to create a disputed issue where none exists.  Specifically, while Plaintiffs assert that they are attacking a sheriff's sale and not a state-court judgment, doc. 21 at ¶ 1, they ignore that the monetary award against them clearly resulted from a final state-court judgment.  *See* doc. 1 at ¶¶ 21-23.  Moreover, though Plaintiffs attack the propriety of the 2004 jury award and the subsequent denials of their post-trial motions, it is that judgment – which constitutes a final state-court judgment – that forms the basis for the writ of execution issued by the circuit clerk on Plaintiffs' property, which prompted the eventual sale of Plaintiffs' home.  Furthermore, it is clear that the sale of their home – the action that caused Plaintiffs' injury – only occurred after Judge Harrington ordered it to proceed.  *Id.* at ¶ 29.  Thus, Plaintiffs' complaint attacks the merits of the state court's decisions in 2004 and the legal basis of Judge Harrington's order regarding the sheriff's

sale.[13]

But it would make no difference even if Plaintiffs merely attacked the sufficiency of the procedures of the sheriff's sale, and not the propriety of Judge Harrington's order, because the state-court trial and subsequent order directly gave rise to the sheriff's sale.[14]  *See, e.g., In re Porovne*, 436 B.R. 791, 799 (Bankr. W.D. Pa. 2010) ("Debtor attempted to distinguish [binding case law] on the basis that she was only attacking the sheriff's sale itself rather than the judgment originally giving rise to the sheriff's sale.  This is a distinction without a difference."); *see also Robinson v. Porges*, 382 F. App'x 133, 135 (3rd Cir. 2010) (affirming district court's dismissal of plaintiff's claim where plaintiff asserted equal protection violations based on the procedures of the sheriff's sale but demanded "the return of his home as his own property with free and clear deed and title," which could only be accomplished by rejecting the state court's judgments).  Similarly, Plaintiffs here ask the court to award them "full rights to

---

[13]Judge Harrington ordered the sale to proceed after interpreting Chapters 9 and 10 of Title 6 of the Code of Alabama.  *See* Doc. 26 at 1.  The sale resulted directly from his order.  Under *Rooker-Feldman*, this court cannot review Judge Harrington's interpretation and application of Alabama law to Plaintiffs' claim of exemption. Moreover, since the sheriff's sale is the direct injury upon which Plaintiffs' constitutional claims are based, *Rooker-Feldman* bars this court's review of the case.  *See, e.g., GASH*, 995 F.2d at 729 (applying *Rooker-Feldman* where plaintiff's complained of "injury came from the judgment confirming the sale").

[14] A plain reading of the complaint as well as Plaintiffs' briefs clearly demonstrates that Plaintiffs are, in fact, asserting that Judge Harrington's order was in error.  Indeed, they ask the court to reverse that order and the sale it permitted to proceed.

their property and [to remove] any rights claimed by others," making clear they attack the underlying state judgment.  Doc. 1 at 17.  Indeed, it is particularly apparent that Plaintiffs are attacking a state court judgment where, as here, they include the state-court judge responsible for that judgment as a defendant.  *See Garry v. Geils*, 82 F.3d 1362, 1367 n.10 (7th Cir. 1996) ("[F]ocus upon inquiry at the hands of a state court is particularly apparent in cases where the federal plaintiff is actually suing the state court or state court judges.").

Plaintiffs' briefs also seem to assert that Judge Harrington's order was not sufficiently "final."  To the extent that Plaintiffs indeed argue that a non-final judgment does not require *Rooker-Feldman* analysis, they are correct.  *See Nicholson*, 558 F.3d at 1276-79 (holding that when an appeal from a state court order remains pending, the judgment is not final and *Rooker-Feldman* does not apply).[15]  Here, however, Plaintiffs chose not to appeal Judge Harrington's order, and, accordingly, no such appeal is pending.  *See id.*, 558 F.3d at 1276 (noting that *Rooker-Feldman* does apply where the state court loser declines to appeal the adverse state court judgment, but not where an appeal is pending); *see also Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (applying *Rooker-Feldman* to bar

---

[15] In such cases, however, the various *Younger*, *Colorado River*, or *Pullman* abstention doctrines rather than *Rooker-Feldman* may bar federal review of the state court proceedings.  *See Exxon Mobil*, 544 U.S. at 1257.

plaintiff's request to have federal district court enjoin state officials from

enforcing a state court judge's order to have the plaintiff disclose certain medical

records in a worker's compensation case). Thus, the state-court order to continue

with the foreclosure and sheriff's sale of their home is considered final where, as

here, Plaintiffs choose not to appeal that order. *Nicholson*, 558 F.3d at 1277 n.11

(collecting cases) (embracing, in dicta, a broader interpretation of *Exxon Mobil* to

prevent litigants from avoiding the *Rooker-Feldman* doctrine by simply declining

to appeal a case). Accordingly, the *Rooker-Feldman* doctrine bars the review in

this court of the 2004 judgment, Judge Harrington's order, and the attendant sale.

> (iii)   *The Eleventh Circuit Has Not Recognized An Exception to the Lack of Rooker-Feldman Doctrine Where the State Courts Lacks Jurisdiction*

Next, Plaintiffs argue that *Rooker-Feldman* does not apply because Judge

Harrington "acted outside his judicial capacity" when he issued the order for the

sheriff's sale to proceed.[16] Doc. 22. They assert that Judge Harrington's

involvement was unnecessary because a sheriff's sale may proceed without the

involvement of a judge. Doc. 1 at ¶ 29. In effect, Plaintiffs' arguments really

address Judge Harrington's jurisdiction, not whether he acted outside his judicial

---

[16] Plaintiffs present this argument to contest Judge Harrington's defense of absolute judicial immunity. Nonetheless, the court liberally construes Plaintiffs' arguments and inquires whether it has bearing on the court's *Rooker-Feldman* analysis.

capacity.  Plaintiffs' pleadings readily concede that Judge Harrington ordered the sale, as reflected in the "court file," while performing his role as judicial officer of the 18th Judicial Circuit of Alabama.  *See* doc. 1 at ¶ 29.

Insofar as Plaintiffs question Judge Harrington's jurisdiction to order the sale, the law does not support their contention.  Plaintiffs direct the court to *Ex parte Lynn*, 727 So.2d 90 (Ala. 1999) for the contention that judicial confirmation is not required for the sheriff's sale.  Plaintiffs undoubtedly are correct that a sheriff's sale does not *require* judicial confirmation to take effect.  *See id.* However, here, members of the Shelby County Sheriff's office apparently presented Judge Harrington with Plaintiffs' exemption claim in order to determine whether they should proceed with the sale.  *Ex parte Lynn* simply does not address a court's jurisdiction to consider defects in a claim of exemption nor does it address a court's power to order a sheriff's sale to proceed.  *See id.*  Plaintiffs present the court with no case law, nor can the court identify any such law, that dictates that an Alabama circuit court judge lacks the jurisdiction to consider procedural questions regarding a writ of execution filed by the circuit clerk of his judicial circuit.

Significantly, even assuming Judge Harrington lacked jurisdiction, the Eleventh Circuit has recognized no such exception to the *Rooker-Feldman*

28

doctrine. *See Ware*, 2010 WL 3329959, at *2 ("We have not yet recognized an exception to the *Rooker-Feldman* doctrine in cases where the state court that issued the underlying state court judgment lacked jurisdiction."); *see also Casale*, 558 F.3d at 1261 (noting that some circuits have adopted an exception where the state court lacked jurisdiction, "but our circuit has never adopted that exception"); *see also Doe v. Mann*, 415 F.3d 1038, 1042 (9th Cir. 2005) (noting that the claim that the state court lacked jurisdiction does not bar *Rooker-Feldman* because a state court necessarily must have found it had jurisdiction before making its ruling). Accordingly, even if Plaintiffs were correct that the state court lacked jurisdiction, this court still cannot review their claims. They should have raised that argument instead with the Alabama Court of Civil Appeals.

### C.  Alternative Grounds for Dismissal

The court understands Plaintiffs' complaint to assert, broadly speaking, that the various Defendants (minus the State Bar) are all responsible for allowing an "illegal" sheriff's sale of their home to occur. Consequently, Plaintiffs filed this suit asserting that the sale violates state law and their constitutional rights and that, therefore, the individual Defendants are liable for their respective roles in the process. For that reason, the court believes it does not have jurisdiction over the claims against any of these Defendants, since, in effect, Plaintiffs are asking this

court to review a state court judicial order.  Where it appears a court may dismiss a

case for lack of subject matter jurisdiction as well as on other grounds such as a

failure to state a claim, the Eleventh Circuit urges courts to dismiss without

prejudice for lack of jurisdiction.  *See Boda v. United States*, 698 F.2d 1174, 1177

n.4 (11th Cir. 1983) ("Where dismissal can be based on lack of subject matter

jurisdiction and failure to state a claim, the court should dismiss on only the

jurisdictional ground.  This dismissal is without prejudice."); *see also Hitt v. City*

*of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).  However, as outlined below,

even if the *Rooker-Feldman* doctrine does not prevent this court from reviewing

Plaintiffs' case, the court finds that Plaintiffs' federal claims, under § 1983 and §

1985(3), are due to be dismissed.  Finally, the court declines to exercise pendant

jurisdiction over any remaining state law claims that are not barred by *Rooker-*

*Feldman*.

### (i) Immunity of Judge Harrington and the Sheriffs

Plaintiffs' pleadings confirm that Judge Harrington acted in his judicial

capacity and within the jurisdiction conferred on Alabama circuit judges to

interpret the Alabama Code in Title 6, Chapters 9 and 10.  *See* doc. 1 at ¶ 29

("Caudill told Shuler that Judge Harrington had ordered that the sale proceed, and

the court file shows that Harrington indeed signed off on the sale.").  Thus, Judge

30

Harrington, and Sheriff Curry and Deputy Sheriff Caudill, when they followed

Judge Harrington's order, all possess judicial immunity for actions taken in their

official capacity.  *See Mireles v. Waco*, 502 U.S. 9, 12-13 (1991); *Sibley v. Lando*,

437 F.3d 1067, 1071-73 (11th Cir. 2005);  *Roland v. Phillips*, 19 F.3d 552, 555-56

(11th Cir. 1994) (collecting cases from other circuits and noting that actions taken

by officers pursuant to facially valid court orders are cloaked with quasi-judicial

immunity).  Because Plaintiffs sue these Defendants for actions taken in their

official capacity, the claims against them are also due to be DISMISSED on

immunity grounds.

> *(ii) Plaintiffs Cannot State a § 1983 Claim Against McGarity and Swatek*

Plaintiffs' claims under § 1983 against McGarity and Swatek, alleging

violation of the Fourteenth Amendment's Equal Protection guarantees, also fail

because Swatek and McGarity did not act under state law.  "The Fourteenth

Amendment does not prohibit private conduct, however discriminatory or

wrongful, unless the private individual has become so allied with the state as to be

a state actor."  *King*, 167 F. App'x at 122-23.  "However, 'one who has obtained a

state court order or judgment is not engaged in state action merely because [he]

used the state court legal process.'"  *Id.* at 123 (citing *Cobb v. Georgia Power Co.*,

757 F.2d 1248, 1251-52 (1985)).

31

Here, Swatek and McGarity are undeniably private actors.  Plaintiffs cannot assert claims against them under § 1983 because they invoked the legal process in a manner Plaintiffs found improper or unfair.  Thus, Plaintiffs' § 1983 claims against McGarity and Swatek are also due to be DISMISSED on this alternate ground.

### (iii) Failure to Adequately Plead Their § 1985(3) Claim

Plaintiffs have not adequately plead their § 1985(3) claim.  "To state a claim under § 1985(3), a plaintiff must allege: (1) defendants engaged in a conspiracy; (2) the conspiracy's purpose was to directly or indirectly deprive a protected person or class the equal protection of the laws, or equal privileges and immunities under the laws; (3) a conspirator committed an act to further the conspiracy; and (4) as a result, the plaintiff suffered injury to either his person or his property, or was deprived of a right or privilege of a citizen of the United States.  *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1311 (11th Cir. 2010).  "To state a claim for relief under § 1985(3), a plaintiff must establish that there was 'some *racial*, or perhaps otherwise *class-based*, *invidiously discriminatory* animus behind the conspirators' action.'"  *Smith v. Belle*, 321 F. App'x 838, 845 (11th Cir. 2009) (emphasis added) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

Here, as in *Smith*, Plaintiffs "did not allege in [their complaint] that the

32

[Defendants] were motivated by any racial or other class-based discriminatory animus." 321 F. App'x at 845 (upholding dismissal of § 1985(3) claims where plaintiff alleged conspiracy of state actors based upon financial benefit to the state actors). Plaintiffs' claims specifically assert that the alleged animus of Defendants is an outgrowth of a property-boundary dispute amongst neighbors. Doc. 1 at ¶ 17 ("The genesis of the instant lawsuit dates to . . . when McGarity bought [his] property."). At most, Plaintiffs assert a conspiracy amongst friends who improperly manipulated the court system because of a grudge against Plaintiff. However plausible that claim may be, Plaintiffs cannot show the necessary racial or class-based animus to support a claim under § 1985(3). Thus, the court need not afford Plaintiffs an opportunity to amend their federal claims where such amendment would be futile. *See Bryant v. Dupree* 252 F.3d 1161, 1163 (11th Cir. 2001). Accordingly, Plaintiffs' § 1985(3) claim is DISMISSED also on this alternate ground.

## IV. CONCLUSION

Plaintiffs' state and federal claims, if any, against the State Bar fail on standing and immunity grounds. As for the remaining Defendants, based on the *Rooker-Feldman* doctrine, the court concludes that it lacks subject matter jurisdiction over Plaintiffs' claims. To the extent that *Rooker-Feldman* does not

apply, Plaintiffs' federal claims against Judge Harrington, Sheriff Curry, and Deputy Sheriff Caudill fail on immunity grounds, the § 1983 claim against McGarity and Swatek fails because neither acted under color of state law, and the § 1985 claims fail because there is no racial or class-based discrimination.

The only remaining claims are state law claims, however the court lacks jurisdiction under 28 U.S.C. § 1332 because it is apparent that all of the parties are citizens of Alabama.  Accordingly, the court **DISMISSES** this action without prejudice.  Costs are taxed as paid.

DONE this the 29th day of December, 2010.


**ABDUL K. KALLON**
**UNITED STATES DISTRICT JUDGE**